IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENRIQUE ZAMARRIPA, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:16-CV-3109-S-BH |
| | § | |
| FARRAKHAN, et al., | § | |
| | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By order of reference dated August 3, 2018 (doc. 86), this case was referred for full case management. Before the Court for recommendation are the *Plaintiff's Motion for Default Judgment Against Defendant Deray McKesson*, filed August 14, 2018 (doc. 89), defendant Deray McKesson's *Motion to Set Aside Default and to Dismiss Plaintiff's Complaint*, filed September 13, 2018 (doc. 100), and *Opal Tometi and Patrisse Cullors' Special Appearance to Challenge Service of Process and Personal Jurisdiction*, filed September 24, 2018 (doc. 106). Based on the relevant filings and applicable law, the motion for default judgment should be **DENIED**, the motion to set aside default and motion to dismiss should be **GRANTED**, the remaining motion should be **DENIED as moot**, and the claims against the remaining defendants should be *sua sponte* **DISMISSED** for lack of subject matter jurisdiction.

### I. BACKGROUND

This lawsuit arises out of the fatal shooting of five Dallas police officers on July 7, 2016, by Micah Johnson (Shooter). (doc. 1 at 3, 5, 11.)[1] Enrique Zamarippa (Plaintiff) is the father of one of the officers who was killed during the shooting. (*Id.*) On November 7, 2016, Plaintiff filed this

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

lawsuit against Opal Tometi, Patrisse Cullors, Deray McKesson, Black Lives Matter (BLM), the New Black Panthers Party (NBPP),[2] and nine other individuals and organizations[3] "in their individual and official capacities where applicable," asserting claims for wrongful death and intentional infliction of emotional distress. (*Id*. at 40-42.) He seeks "actual and compensatory damages in excess of $90,000,000, punitive damages in excess of $550,000,000," attorney's fees, and costs. (*Id*. at 42.)

Plaintiff alleges that all of the defendants have incited "unlawful acts including violent riots, assaults and murders of police, and acts of violence, including seriously [sic] bodily injury or death, against police officers and other law enforcement persons of all races and ethnicities, Jews, and Caucasians." (*Id*. at 5.) He claims that the defendants are "convincing their supporters and others that there is a civil war between blacks and law enforcement" and inciting violence "with the fiction that police officers . . . are intentionally and knowingly arresting and prosecuting blacks and other minorities who have not committed a crime." (*Id*. at 5-6.) According to Plaintiff, the defendants "are encouraging disaffected blacks to ignore, disrespect, and assault law enforcement officials, and commit violence and lethal force." (*Id*.) He claims that "[a]s a direct and proximate result of" these alleged actions, there have been increases in violence in "more than 30 major U.S. cities." (*Id*.)

Plaintiff claims that BLM was created in part by Cullors and Tometi, and that McKesson is one of its leaders. (*Id*. at 30.) He contends that BLM is "a violent and revolutionary gang" that has "incited and committed further violence, severe bodily injury and death against police officers of

---

[2] BLM and the NBPP have not appeared in this case.

[3] The other named defendants are Louis Farrakhan, Al Sharpton, Rashad Turner, Alicia Garza, Johnetta Elzie, Malik Zulu Shabazz, George Soros, the Nation of Islam, and the National Action Network. (doc. 3 at 3-4.) The claims against all of these defendants have already been dismissed. (*See* docs. 63; 65; 82-83.)

all races and ethnicities . . . ." (*Id*. at 29.) He alleges that "BLM's calls for incitement of violence of death have undeniably led to explosions of violence," identifies several incidents which allegedly resulted from BLM's "incitement of violence;" and claims that Shooter allegedly said "his motivation for the [Dallas] shooting was that he was 'upset about [BLM]' and 'wanted to kill white people,' especially white police officers." (*Id*. at 12, 30-35.)

Plaintiff also contends that Shooter was a follower of the NBPP, and that he carried out the shooting "in furtherance of, and under direction from" the NBPP, among others. (*Id*. at 5, 12-13, 35-37.) He claims that the NBPP, along with the Nation of Islam, "coordinated and directed the Dallas Police Shooting in furtherance of the conspiracy with each and every [d]efendant to wage a war against law enforcement officers, Caucasians, and Jews." (*Id*. at 40.) He further claims that it is the NBPP's "historical and undeniable mission to incite violence against whites, and Jews in particular," and that it "routinely calls for the murder of individuals fitting those descriptions." (*Id*. at 13, 35.)

The Clerk of Court issued a summons for all of the defendants on November 7, 2016. (doc. 3.) On April 10, 2017, Plaintiff filed proof of service indicating that McKesson had been served with copies of the summons and complaint on November 23, 2016. (doc. 41 at 5.) On July 27, 2018, Plaintiff moved for entry of default against McKesson, and the Clerk entered default on August 6, 2018. (docs. 85; 88.) On August 14, 2018, Plaintiff moved for default judgment against McKesson. (doc. 89.) On September 13, 2018, McKesson moved to set aside the entry of default and to dismiss Plaintiff's claims against him for lack of subject matter jurisdiction; Plaintiff responded on October 10, 2018; and McKesson replied on October 18, 2018. (docs. 100-101; 109; 111.)

On September 24, 2018, Tometi and Cullors moved to dismiss Plaintiff's claims against them for lack of personal jurisdiction and insufficient service of process; Plaintiff responded on October 15, 2018; and Tometi and Cullors replied on October 29, 2018.  (docs. 106; 110; 112.)  The motions are now ripe for recommendation.

## II. MOTION TO SET ASIDE DEFAULT

McKesson moves to set aside the Clerk's entry of default because he was not served with a copy of the complaint, the "affidavit of service is inaccurate," and he "has presented a meritorious defense in the form of a motion to dismiss."  (doc. 101 at 1-3.)

Under Rule 55(c), courts may set aside an entry of default for good cause.  Fed. R. Civ. P. 55(c); *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *10 (N.D. Tex. Mar. 25, 2004).  The good cause standard is a liberal one.  *Effjohn Int'l Cruise Holdings, Inc. v. A & L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).  In deciding whether a defendant has shown good cause, courts consider: (1) whether the failure to respond was due to excusable neglect; (2) whether the plaintiff would suffer prejudice if the default was set aside; and (3) whether the defendant has presented a meritorious defense.  *Id.*; *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (adopting excusable neglect inquiry in place of willfulness); *see also Stevenson v. Verizon Wireless, LLC*, No. 3:08-CV-0168-G, 2009 WL 188188, at *2 & n. (N.D. Tex. Jan. 27, 2009) (applying excusable neglect factor in accord with *CJC Holdings*).  These factors are nonexclusive; another factor often considered by courts is whether the party acted promptly to correct the default.  *Effjohn*, 346 F.3d at 563.  "The decision to set aside a default decree lies within the sound discretion of the district court." *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985).

Excusable neglect is an "'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). The term extends to "simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id*. at 388. Excusable neglect has been found to include late filings resulting from "mistake, inadvertence or carelessness . . . ." *Mattress Giant Corp. v. Motor Adver. & Design Inc.*, No. 3:07-CV-1728-D, 2008 WL 898772, at *2 (N.D. Tex. Mar. 31, 2008); *see also UMG Recordings, Inc. v. Landers*, No. CIV.A. 07-1279, 2008 WL 60422, at *2 (W.D. La. Jan. 4, 2008) (excusing defendant's delay in answering the complaint in the absence of evidence that *pro se* defendant acted intentionally); *In re Waggoner*, No. 05-21523-RLJ-7, 2007 WL 3171740, at *5 (Bankr. N.D. Tex. Oct. 24, 2007) (excusing IRS's delay in answering complaint despite failure to proffer a reason).

Here, McKesson has explained that his failure to respond to the complaint was not willful because he was never served with a copy of Plaintiff's complaint. (doc. 101 at 2.) He argues that the affidavit of service from the process server is unreliable because it improperly describes the individual who was allegedly provided with copies of the summons and complaint, and he provides an affidavit from that individual in support of his argument. (docs. 101 at 2-3; 102 at 3.) Under the circumstances, the failure to file a timely answer meets the "elastic" standard for excusable neglect. *Pioneer Inv. Servs. Co.*, 507 U.S. at 392. There is also no indication that Plaintiff would suffer prejudice if the default were to be set aside. McKesson has made an appearance before a ruling on the motion for default judgment. *See Verity Instruments, Inc. v. KLA-Tencor Corp.*, No. 3:06-CV-0005-D, 2006 WL 929235, at *2 (N.D. Tex. Apr. 10, 2006) (requirement that plaintiffs litigate their claims caused no unfair prejudice). Finally, McKesson filed a motion to dismiss along

5

with his motion to set aside the default which potentially raises a meritorious defense, lack of standing, to Plaintiff's claims against him. *Blue Spike LLC v. ASUS Comput. Int'l, Inc.*, No. 6:16-CV-1384-RWS-KNM, 2018 WL 1443783, at *3 (E.D. Tex. Mar. 23, 2018) (identifying a lack of standing as a meritorious defense); *Terry v. Inocencio*, No. 3:11-CV-0660-K-BK, 2014 WL 4686570, at *11 (N.D. Tex. Sept. 2, 2014) (same), *adopted by*, 2014 WL 4704629 (N.D. Tex. Sept. 22, 2014). Because McKesson has shown good cause, his motion to set aside default should be granted.

### III. MOTION FOR DEFAULT JUDGMENT

Plaintiff moves for a default judgment against McKesson. (doc. 89.)

Rule 55 allows a default judgment to be entered against a party and provides the applicable procedure. *See* Fed. R. Civ. P. 55. There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk or the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141.

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (citation and internal quotation marks omitted). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)). Courts may consider "the amount of money at stake,

6

the possibility of a dispute concerning material facts, and the strong policy favoring decisions on the merits." *Stelax Indus., Ltd.*, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004) (citation omitted). The decision to enter a judgment by default is discretionary. *Id.*

Here, McKesson has defended the case by filing a motion to set aside default and to dismiss the claims against him. *See Rogers v. Barnhart*, 365 F. Supp. 2d 803, 808 (S.D. Tex. 2004) (citing *Sun Bank*, 874 F.2d 274, 277 (5th Cir. 1989) ("The filing of a motion to dismiss is normally considered to constitute an appearance . . . .")). Plaintiff therefore cannot satisfy the first requirement for a default judgment, e.g., McKesson's failure "to plead or otherwise defend." Fed. R. Civ. P. 55(a); *New York Life Ins. Co.*, 84 F.3d at 141. In addition, Plaintiff cannot satisfy the second requirement for a default judgment, i.e., entry of default, because the Court is recommending that the entry of default be set aside. *Id.* Even though McKesson filed his motion after the Clerk entered default, Plaintiff is not entitled to default judgment as a matter of right. *See Lewis*, 236 F.3d at 767. In view of the damages sought, a decision on the merits is warranted. *See Stelax Indus., Ltd.*, 2004 WL 733844, at *11. Accordingly, Plaintiff's motion for default judgment should be denied.

### IV. MOTION TO DISMISS

McKesson moves to dismiss Plaintiff's claims for lack of subject matter jurisdiction. (doc. 101 at 3-5.)

**A.** **Legal Standard**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the

7

power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient,

those allegations alone provide jurisdiction." *Id*.

Here, McKesson relies solely on Plaintiff's complaint in support of his motion. The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412–13.

**B.** **Standing**

McKesson argues that Plaintiff lacks standing to assert any of the claims alleged in the complaint against him because he "has failed to plead the 'causal connection' required for standing . . . ." (doc. 101 at 3-5.)[4] Plaintiff responds that he has standing because his son was one of the officers killed by Shooter "under the direction [of]" BLM, and McKesson is a "leading voice" in BLM. (doc. 109 at 6.)

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This requirement, like other jurisdictional requirements, is "not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). The Supreme Court "insist[s] on strict compliance" with the requirement. *Raines*, 521 U.S. at 819. "Even when standing is not raised by the parties, the Court must, where necessary, raise the issue *sua sponte*." *Reed v. Rawlings*, No. 3:18-CV-1032-B, 2018

---

[4] Although McKesson is the only defendant that moves to dismiss based on a lack of standing, it is a jurisdictional doctrine that may be raised *sua sponte*. *See Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 n.2 (5th Cir. 2018) (citing *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010)) (recognizing that standing may be addressed *sua sponte*); *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) (noting "the issue of standing is one of subject matter jurisdiction"). A district court has "the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985). If the court finds that it lacks subject matter jurisdiction, it has a duty to dismiss the case. *Id*.; *see* Fed. R. Civ. P. 12(h)(3).

WL 5113143, at *3 (N.D. Tex. Oct. 19, 2018) (citing *Collins v. Mnuchin*, 896 F.3d 640, 654 n.83 (5th Cir. 2018)); *see also Legacy Cmty. Health Servs., Inc.*, 881 F.3d at 366 n.2 (citing *K.P.*, 627 F.3d at 122).

To meet the standing requirement, plaintiffs "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines*, 521 U.S. at 818–819 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As stated in *City of Los Angeles v. Lyons*, to satisfy the "case or controversy" requirement of Article III, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." 461 U.S. 95, 101–02 (1983) (citations and internal quotation marks omitted) (addressing standing to sue). The injury must be fairly traceable "to the challenged action of the defendant," rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). "The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between [the plaintiff] and the defendant." *Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983). Courts are to assess a plaintiff's "standing to bring each of its claims against each defendant." *Coastal Habitat Alliance v. Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008) (citing *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001), *aff'd*, 385 F. App'x 358 (5th. Cir. 2010)); *see also Hoyt v. City of El Paso, Tex.*, 878 F. Supp. 2d 721, 727 (W.D. Tex. 2012) (quoting *Coastal Habitat Alliance*, 601 F. Supp. 2d at 877); *Sullo & Bobbitt, PLLC v. Abbott*, No. 3:11-CV-1926-D, 2012 WL 2796794, at *5 (N.D. Tex. July 10, 2012) (dismissing claim in part because plaintiffs could not show an injury

10

fairly traceable to defendant).

### 1. *Defendant McKesson*

Plaintiff makes only general allegations that all named defendants, including McKesson, have incited unlawful acts, convinced supporters "that there is a civil war between blacks and law enforcement," and encouraged "disaffected blacks to ignore, disrespect, and assault law enforcement officials, and commit violence and lethal force." (doc. 1 at 5-6.) He claims that McKesson is one of the leaders of BLM, and that "BLM's calls for and incitement of violence . . . have undeniably led to explosions of violence," such as the shooting in which his son was killed. (*Id*. at 30.)

This court has previously found similar allegations against other defendants in this case insufficient to satisfy the causation element of standing because they are "wholly conclusory." *See Zamarripa v. Farrakhan*, No. 3:16-CV-3109-S, 2018 WL 3336458, at *3 (N.D. Tex. July 6, 2018) (finding that allegations that the defendants advocated for and incited violence which "resulted in injury to or death of police officers" were wholly conclusory); *see also Pennie v. Obama*, 255 F. Supp. 3d 648, 661 (N.D. Tex. 2017) (finding that the plaintiffs failed to allege how the defendants caused their injuries "by making statements or acts directed toward others. Instead, [they] allege intervening causes, namely, acts of third parties, separating their alleged injuries from the complained of conduct by the [defendants]."). Like his allegations against other defendants, Plaintiff's allegations against McKesson "fail to reasonably trace [any alleged] words and actions of [McKesson] to the death of [Plaintiff's] son.'" *See Zamarripa*, 2018 WL 3336458, at *3. He fails to show "how the [alleged] injury at hand resulted from anything other than 'the independent action

11

of" [Shooter], who is not before the Court."[5] *Zamarripa*, 2018 WL 3336458, at *3 (citing *Simon*, 426 U.S. at 42); *see also Pennie*, 255 F. Supp. 3d at 661 (citing *Garza v. United States*, 809 F.2d 1170, 1173 (5th Cir. 1987)) ("Unforeseen intervening acts generally break the chain of causation."). In absence of an injury fairly traceable to McKesson, Plaintiff cannot satisfy the second requirement for Article III standing, and his claims against him should be dismissed for lack of subject matter jurisdiction. *Raines*, 521 U.S. at 818; *Lujan*, 504 U.S. at 560–61; *see Zamarippa*, 2018 WL 3336458, at *2–3.

### 2. *Remaining Defendants*

Plaintiff identifies the Tometi and Cullors as creators of BLM, and his allegations against them and BLM are identical to those against McKesson. (doc. 1 at 5-6, 30.) Regarding the NBPP, Plaintiff makes only general allegations that Shooter is a follower of the NBPP who carried out the shooting under its direction. (doc. 1 at 5, 12-13, 35-37.) He claims that the NBPP coordinated and directed the shooting in furtherance of a conspiracy with the other defendants "to wage war against law enforcement officers, Caucasians, and Jews." (*Id*. at 40.) As previously found in this case, Plaintiff "concedes that [Shooter] perpetrated the shooting of the police officers and that [Shooter] said he acted alone." *Zamarippa*, 2018 WL 3336458, at *2. Again, Plaintiff fails "to reasonably trace [any alleged] words and actions of [Tometi, Cullors, BLM, or the NBPP] to the death of [his] son." *Id*. Because he relies on the only conclusory allegations against those parties, and fails to show how any alleged actions by them are fairly traceable to his son's death, he similarly cannot

---

[5] "When there is an intervening cause of a plaintiff's injury, courts consider whether a defendant created an 'incentive structure to which the intervening third party, who directly causes the injury, is responding.'" *Zamarripa*, 2018 WL 3336458, at *3 (quoting *TF-Harbor, LLC v. City of Rockwall*, 18 F. Supp. 3d 810, 820 (N.D. Tex. 2014)). Here, Plaintiff has not pleaded any facts to suggest that Shooter's conduct was dependent on or incentivized by any of the remaining defendants, however.

satisfy the second element of Article III standing to assert his claims against them. *See id.* at *2–3. Accordingly, his claims against Tometi, Cullors, BLM, and the NBPP should be *sua sponte* dismissed for lack of subject matter jurisdiction.[6]

## V. RECOMMENDATION

Plaintiff's motion for default judgment should be **DENIED**. Defendant McKesson's motions to set aside default and dismiss should be **GRANTED**, and Plaintiff's claims against him should be **DISMISSED without prejudice** for lack of subject matter jurisdiction. Plaintiff's claims against the remaining defendants should be *sua sponte* **DISMISSED without prejudice** for lack of subject matter jurisdiction, and the remaining motion should be **DENIED as moot**.

**SO RECOMMENDED** on this 15th day of January, 2019.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[6] As noted, courts have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties, and to dismiss the case if it is lacking. *Giannakos*, 762 F.2d at 1297; Fed. R. Civ. P. 12(h)(3). Tometi and Cullors also filed a motion seeking to dismiss the claims against them for lack of personal jurisdiction and insufficient service of process. (doc. 106.) Because the Court has found that it lacks subject matter jurisdiction over this case, it is unnecessary to reach their arguments for dismissal, and their motion should be denied as moot.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE